Electronically FILED by Superior Court of California, County of Los Angeles on 04/14/2021 01:54 PM Sherri R. Carter, Executive Officer/Clerk of Court, by D. Williams Deputy Clerk

Case 2:21-cv-05062-JFW-E   Document 1-1   Filed 06/22/21   Page 1 of 11   Page ID #:8

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Patricia Nieto

JONATHAN A. STIEGLITZ
(SBN 278028)
jonathan.a.stieglitz@gmail.com
THE LAW OFFICES OF
JONATHAN A. STIEGLITZ
11845 W. Olympic Blvd., Ste. 800
Los Angeles, California 90064
Telephone:     (323) 979-2063
Facsimile:     (323) 488-6748

Attorney for Plaintiff
O.C. Multispecialty Surgery Center

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

| | |
|---|---|
| O.C. Multispecialty Surgery Center<br><br>             Plaintiff,<br><br>      v.<br><br>Blue Cross and Blue Shield of Kansas City<br>and DOES 1-10,<br><br>             Defendant. | Case No.: 21STCV14160<br><br>Complaint For:<br><br>1.  NEGLIGENT MISREPRESENTATION<br>2.  BREACH OF WRITTEN CONTRACT<br><br><br>**(Jury Trial Requested)**<br>**Total Damages -  $300,000.00** |

Complaint

1

2      Plaintiff O.C. Multispecialty Surgery Center (hereinafter referred to as "PLAINTIFF" or

3   "Medical Provider") complains and alleges:

4                                   **PARTIES**

5      1.      Plaintiff, Medical Provider, is and at all relevant times was a medical corporation,

6   organized and existing under the laws of the State of California.  Medical Provider is and at all

7   relevant times was in good standing under the laws of the State of California.

8      2.      DEFENDANT, Blue Cross and Blue Shield of Kansas City, is and was licensed to

9   do business in and is and was doing business in the State of California, as insurers. PLAINTIFF is

10  informed and believes that DEFENDANT is licensed by to transact the business of insurance in

11  the State of California.  DEFENDANT is, in fact, transacting the business of insurance in the

12  State of California and is thereby subject to the laws and regulations of the State of California.

13     3.      The true names and capacities, whether individual, corporate, associate, or

14  otherwise, of defendants DOES 1 through 10, inclusive, are unknown to PLAINTIFF, who

15  therefore sues said defendants by such fictitious names. PLAINTIFF is informed and believes and

16  thereon alleges that each of the defendants designated herein as a DOE is legally responsible in

17  some manner for the events and happenings referred to herein and legally caused injury and

18  damages proximately thereby to PLAINTIFF. PLAINTIFF will seek leave of this Court to amend

19  this Complaint to insert their true names and capacities in place and instead of the fictitious

20  names when they become known to it.

21     4.      At all times herein mentioned, unless otherwise indicated, DEFENDANT/s were

22  the agents and/or employees of each of the remaining defendants, and were at all times acting

23  within the purpose and scope of said agency and employment, and each defendant has ratified and

24  approved the acts of his agent. At all times herein mentioned, DEFENDANT/s had actual or

25  ostensible authority to act on each other's behalf in certifying or authorizing the provision of

26  services; processing and administering the claims and appeals; pricing the claims; approving or

27  denying the claims; directing each other as to whether and/or how to pay claims; issuing

28

1  remittance advices and explanations of benefits statements; making payments to Medical Provider

2  and its Patients.

3  **GENERAL ALLEGATIONS**

4       5.      All of the claims asserted in this complaint are based upon the individual and

5  proper rights of Medical Provider in its own individual capacity and are not derivative of the

6  contractual or other rights of the Medical Provider's Patient.  A number of the claims asserted in

7  this complaint arise out of the Medical Provider's interactions with DEFENDANT and DOES 1

8  through 10, inclusive and are derived from the representations and warranties made during those

9  conversations amongst those parties. Medical Provider does not in any way, seek to enforce the

10  contractual rights of the Medical Provider's Patients, through the Patients' insurance contract,

11  policies, certificates of coverage or other written insurance agreements.

12       6.      This complaint arises out of the failure of DEFENDANT to make proper payments

13  and/or the underpayment to Medical Provider by DEFENDANT and DOES 1 through 10,

14  inclusive, of amounts due and owing now to Medical Provider for surgical care, treatment and

15  procedures provided to Patients, who are insureds, members, policyholders, certificate-holders or

16  were otherwise covered for health, hospitalization and major medical insurance through policies

17  or certificates of insurance issued and underwritten by DEFENDANT and DOES 1 through 10,

18  inclusive.

19       7.      Medical Provider is informed and believes based on DEFENDANT's oral and

20  other representations that the Patient was an insured of DEFENDANT either as a subscriber to

21  coverage or a dependent of a subscriber to coverage under a policy or certificate of insurance

22  issued and underwritten by DEFENDANT and DOES 1 through 10, inclusive, and each of them.

23  Medical Provider is informed and believes that the Patient entered into a valid insurance

24  agreement with DEFENDANT for the specific purpose of ensuring that the Patient would have

25  access to medically necessary treatments, care, procedures and surgeries by medical practitioners

26  like Medical Provider and ensuring that DEFENDANT would pay for the health care expenses

27  incurred by the Patient.

28

COMPLAINT

8.    Medical Provider is informed and believes that DEFENDANT and DOES 1 through 10, inclusive, and each of them, received and continue to receive, valuable premium payments from the Patient and/or other consideration from Patient under the subject policies applicable to Patient.

9.    It is standard practice in the health care industry that when a medical provider enters into a written preferred provider contract with a health plan such as DEFENDANT, that a medical provider agrees to accept reimbursement that is discounted from the medical provider's total billed charges in exchange for the benefits of being a preferred or contracted provider.

10.   Those benefits include an increased volume of business, because the health plan provides financial and other incentives to its members to receive their medical care and treatments from the contracted provider, such as advertising that the provider is "in network", and allowing the members to pay lower co-payments and deductibles to obtain care and treatment from a contracted provider.

11.   Conversely, when a medical provider, such as Medical Provider, does not have a written contract or preferred provider agreement with a health plan, the medical provider receives no referrals from the health plan.

12.   The medical provider has no obligation to reduce its charges. The health plan is not entitled to a discount from the medical provider's total bill charge for the services rendered, because it is not providing the medical provider with in network medical provider benefits, such as increased patient volume and direct payment obligations.

13.   The reason why medical providers have chosen to forgo the benefits of a contract with a payor is that, in recent years, many insurers including DEFENDANT's contracted rates for in-network providers have been so meager, one-sided and onerous, that many providers like Medical Provider have determined that they cannot afford to enter into such contracts.  As a result, a growing number of medical providers have become non-contracted or out of network providers.

14.   Payors and insurers still want their patients to be seen and so they commonly promise to pay out of network providers a percentage of the market rate for the procedure, also

described as, an average payment for the procedure performed or provided by similarly situated medical providers within similarly situated areas or places of practice. Rather than use the words market rate to simplify terms, payors have long used words or combinations of words such as usual, reasonable, customary and allowed, all to mean an average payment for a procedure provided by similarly situated medical providers within similarly situated areas or places of practice ("UCR").

15.     The United States government provides a definition for the term UCR. "The amount paid for a medical service in a geographic area based on what providers in the area usually charge for the same or similar medical service. The UCR amount sometimes is used to determine the allowed amount."[1]

16.     Based upon these criteria, Medical Provider's charges are usual, reasonable and customary.  Medical Provider charged DEFENDANT the same fees that it charges all other payors.  Medical Provider's fees are comparable to the prevailing provider rates for other surgeons in comparable geographic areas to the one in which the services were provided.

17.     DEFENDANT uses the term UCR in its insurance policies.

18.     When DEFENDANT uses the term UCR for the price of a medical service, DEFEDANT will utilize a medical bill database from Fair Health Inc. to determine the exact dollar amount to be paid for a medical claim.[2]

---

[1] *See* Healthcare.gov, UCR (Usual, Customary and Reasonable) (February 19, 2020), https://www.healthcare.gov/glossary/UCR-usual-customary-and-reasonable/ (defining UCR)

[2] United Healthcare, Information on Payment of Out-of-Network Benefits (March 6, 2018), https://www.uhc.com/legal/information-on-payment-of-out-of-network-benefits ("FH, [Fair Health], Benchmarking Database. One of two compilations of information on health care professional charges created by Fair Health and used by affiliates of UnitedHealth Group **to determine payment** for out-of-network professional services when reimbursed under standards such as 'the reasonable and customary amount,' 'the usual, reasonable and customary amount,' 'the prevailing rate,' or other similar terms that base payment on what other healthcare professionals in a geographic area charge for their services."

- 5 -

19.     Fair Health Inc. is a database which is available to the public. It is available for purchase when utilized by entities like DEFENDANT and it is available for free in a more limited fashion for use by consumers.[3]

20.     When a medical provider like PLAINTIFF is told that DEFENDANT will be paying a claim based on UCR, PLAINTIFF expects that DEFENDANT will be utilizing the Fair Health database to calculate the exact dollar amount that will be paid.

21.     In the alternative, pursuant to California Health and Safety Code Section 1371.31 and Cal. Code Regs. tit. 28, § 1300.71(3)(c), all medical providers have their own individual right to payment from insurers for medical services provided to one of their insureds in accordance with a patient's evidence of coverage.

22.     According to California Health and Safety Code Section 1371.31and Cal. Code Regs. tit. 28, § 1300.71, a failure to pay a medical provider in accordance with a patient's evidence of coverage, vests a medical provider with its own separate individual right to recovery in accordance with a patient's evidence of coverage.

23.     In either case, PLAINTIFF has a reputation for providing high quality care and, as a result, PLAINTIFF expects it will be appropriately compensated for those services.

## **SPECIFIC FACTS**

## **PATIENT AS**

24.     On April 26, 2018, Patient received a surgical procedure from Medical Provider.

25.     On January 3, 2018 at 1:19 p.m. so as to determine whether or not to provide services, Medical Provider's employee, MWhite., obtained representations from DEFEDANT's representative, Elizabeth M., regarding the manner in which Medical Provider would be paid for services.

---

[3] *See* fairhealthconsumer.org, (February 19, 2020), https://www.fairhealthconsumer.org/medical/results (assisting consumers to calculate the amount to be paid for a particular medical procedure)

26.     Defendant represented to Medical Provider that Patient's deductible is and was $1,000.00 and Patient's Max Out Of Pocket ("MOOP") expense is and was $3,000.00 and that to date for that calendar year Patient had paid $76.92.

27.     Defendant represented that once the MOOP was met, there would be no further cost sharing with the Patient and Defendant would be responsible for 100% of the UCR rate.

28.     Defendant represented to Medical Provider that payment would not be based on the Medicare Fee Schedule.

29.     All of the information obtained was documented by MEDICAL PROVIDER as part of MEDICAL PROVIDER's office policy and practice.

30.     At no time prior to the provision of services to Patient by MEDICAL PROVIDER was MEDICAL PROVIDER advised that Patient's policy or certificate of insurance was subject to certain exclusions, limitations or qualifications, which might result in denial of coverage, limitation of payment or any other method of payment unrelated to the UCR rate.

31.     DEFENDANT did not make reference to any other portion of Patient's plan that would put MEDICAL PROVIDER on notice of any reduction in the originally stated payment percentage.

32.     Despite representing that payment would be made at the UCR rate, DEFENDANT knew or should have known that it would not be paying Medical Provider at the UCR rate.

33.     Despite representing that payment would not be made at a Medicare rate, DEFENDANT knew or should have known that it would be paying Medical Provider at a Medicare rate.

34.     MEDICAL PROVIDER was never provided with a copy of Patient's plan by DEFENDANT or Patient. As a result, MEDICAL PROVIDER could not even make itself aware of any reduction of the payment amount.

35.     Medical Provider relied and provided services solely based on DEFENDANT's statements, promises and representations. Statements which had no relation to DEFENDANT and Patient's plan document, as the statements may or may not have been based in the DEFENDANT or Patient's plan documents, but that bore no consideration when Medical Provider agreed to

COMPLAINT

provide medical services. Medical Provider took DEFENDANT at its word and promises and provided services based solely on those promises and representations.

36.     In the alternative, pursuant to California Health and Safety Code Section 1371.31 and Cal. Code Regs. tit. 28, § 1300.71(3)(c) DEFENDANT had a contractual obligation to pay Medical Provider in accordance with Patient's plan document and agreement.

37.     According to the Patient's plan agreement, DEFENDANT was obligated to pay Medical Provider, Medical Provider's full billed amount.

38.     Under either scenario, following the procedure, Medical Provider submitted to DEFENDANT any and all billing information required by DEFENDANT, including a bill for $344,282.00.

39.     Following the procedure, MEDICAL PROVIDER submitted its claims to DEFENDANT accompanied with lengthy operative reports, chart notes, and other medical records.  No matter whether large or small, all of MEDICAL PROVIDER's claims were submitted to DEFENDANT using CPT codes, Healthcare Common Procedure Coding System ("HCPCS"), and modifiers, as necessary. MEDICAL PROVIDER submitted to DEFENDANT any and all billing information and any and all additional information requested by DEFENDANT.

40.     DEFENDANT processed the bill and made a payment of $2,696.50.

41.     The amount paid was well below the billed amount and well below a UCR amount.

42.     As of the date of this complaint, DEFENDANT has still refused to make the appropriate payment to Medical Provider and Medical Provider is entitled to that payment from DEFENDANT.

**FIRST CAUSE OF ACTION**

**FOR NEGLIGENT MISREPRESENTATION**

43.     Medical Provider incorporates by reference all previous paragraphs as though fully set forth herein.

44.     DEFENDANT falsely represented to Medical Provider that payment for services would be based on UCR and not Medicare.

45.     DEFENDANT knew that any payment made to Medical Provider would not be made the UCR rate and would instead be made at the Medicare rate.

46.     DEFENDANT should have known that in making the representations that payment would be made at the UCR and not Medicare rate that Medical Provider would go on to provide the services.

47.     Medical Provider then relied on DEFENDANT's misrepresentation and provided the services to Patients.

48.     Medical Provider has been damaged in not receiving payment at the represented UCR rate.

## SECOND CAUSE OF ACTION

## FOR BREACH OF WRITTEN CONTRACT

49.     Medical Provider incorporates by reference all previous paragraphs as though fully set forth herein.

50.     Pursuant to California Health and Safety Code Section 1371.31 and CAL. CODE REGS. TIT. 28, § 1300.71, once Medical Provider provided medical services to Patient, DEFENDANT was obligated to pay Medical Provider in accordance with Patient's health plan documents.

51.     Medical Provider provided the services, but DEFENDANT failed to pay according to the terms of the patient's health plan documents.

52.     At best, DEFENDANT applied policies and terms not found in the over 200 pages of each patient's evidence of coverage, but instead claimed to exist in other policies, documents and manuals utilized by DEFENDANT, but never provided to patient or medical providers.

53.     Additionally and separately, Patient assigned the rights and benefits under its health plan to Medical Provider.

54.     At all times the Patient's health plan agreement was in full force and effect.

COMPLAINT

1    55.    Under the terms of the agreement, DEFENDANT was obligated to pay for facility
2    services based on Medical Provider's billed charges.

3    56.    DEFENDANT failed to make payment in accordance with the terms of the written
4    agreement and instead made a payment that was far less than Medical Provider's billed amount.

5    57.    As an actual, legal and proximate result of the aforementioned conduct of
6    defendants, and each of them, Medical Provider has suffered and will continue to suffer in the
7    future, damages based on DEFENDANT's failure to pay Medical Provider under the terms of the
8    Patient's health plan agreement. A total amount to be determined at trial.

9    / / /
10   / / /
11   / / /
12   / / /
13   / / /
14   / / /
15   / / /
16   / / /
17   / / /
18   / / /
19   / / /
20   / / /
21   / / /
22   / / /
23   / / /
24   / / /
25   / / /
26   / / /
27   / / /
28

COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PRAYER FOR RELIEF

**WHEREFORE,** O.C. Multispecialty Surgery Center prays for judgment against defendants as follows:

1.      For compensatory damages in an amount to be determined, plus statutory interest;

2.      For restitution in an amount to be determined, plus statutory interest;

3.      For a declaration that DEFENDANTS are obligated to pay plaintiff all monies owed for services rendered to the Patient; and

4.      For such other relief as the Court deems just and appropriate

.

Dated: April 14, 2021                    LAW OFFICE OF JONATHAN A. STIEGLITZ

By: /s/ Jonathan A. Stieglitz
    JONATHAN A. STIEGLITZ
    O.C. Multispecialty Surgery Center

## DEMAND FOR JURY TRIAL

Plaintiff, O.C. Multispecialty Surgery Center, hereby demands a jury trial as provided by law.

Dated: April 14, 2021                    LAW OFFICE OF JONATHAN A. STIEGLITZ

By: /s/ Jonathan A. Stieglitz
    JONATHAN A. STIEGLITZ
    Attorneys for Plaintiff,
    O.C. Multispecialty Surgery Center

- 11 -

COMPLAINT